UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHELE ST. LOUIS, formerly known
as MICHELE COCOLA,

     Plaintiff,

v.                            Case No.: 2:22-cv-288-JLB-NPM

CITY OF CAPE CORAL,

     Defendant.

_____/

**ORDER**

This cause comes before this Court upon Defendant City of Cape Coral,

Florida's (the "City") Renewed Motion for Summary Judgment. (Doc. 43). The

Court is fully briefed on the matter.[1] For the reasons explained, the City's Motion

for Summary Judgment is **GRANTED.**

**BACKGROUND**

This is an employment discrimination case. Michele St. Louis ("Ms. St.

Louis") alleges that her employer, the City, violated the Equal Pay Act of 1964

("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §§ 2000e-2 *et seq*., by paying her male counterpart a greater salary

for substantially equal work in substantially similar positions and under similar

working conditions. (*See generally* Doc. 7). The City denies the allegations. (*See*

---

[1] Plaintiff, Michele St. Louis, filed a Response in Opposition to the City's Motion for
Summary Judgment (Doc. 50), and the City replied (Doc. 52).

*generally* Doc. 16).  The facts viewed in the light most favorable to Ms. St. Louis, the nonmoving party here, are as follows:

The City hired Ms. St. Louis in July 2006.  (Doc. 7 at ¶ 2; Doc. 16 at ¶ 2).  She was promoted to City Ordinance Inspector ("COI") in September 2017 when a previous City Ordinance Inspector, Wilber "Ed" Fischer ("Mr. Fischer"), retired.  (Doc. 43 at ¶ 3; Doc. 50 at ¶ 3; Doc. 43-1 at ¶ 4; Doc. 43-2 at 1).  Upon her promotion to COI, Ms. St. Louis was compensated at Pay Grade 13.  (*See* Doc. 43 at ¶ 9; Doc. 50 at ¶ 9; Doc. 43-2 at 1).

Until his retirement, Mr. Fischer had performed all water well inspections for the City.  (Doc. 43 at ¶ 2; Doc. 50 at ¶ 2; Doc. 43-1 at ¶ 4).  Following Mr. Fischer's retirement and Ms. St. Louis's promotion to COI, the City "borrowed" David Miller ("Mr. Miller"), a Well Field Maintenance Mechanic from the City's Utilities Department, to perform water well inspections exclusively for the City.  (Doc. 43 at ¶ 4; Doc. 43-1 at ¶ 5; Doc. 50-1 at ¶ 10–11).  While on loan to the City's Community Development Department, Mr. Miller was compensated at Pay Grade 15.  (Doc. 43 at ¶ 5; Doc. 50 at ¶ 5; Doc. 43-1 at ¶ 6).

In May 2018, the City Council approved a reorganization of the City's Community Development Department, which included the creation of a new position titled "Construction Inspector."  (Doc. 43 at ¶ 5; Doc. 50 at ¶ 5; Doc. 43-1 at ¶ 6).  Following the reorganization, the City offered Mr. Miller a transfer from the Utilities Department to the Community Development Department as a Construction Inspector.  (Doc. 43 at ¶ 5; Doc. 50 at ¶ 5).  This was a lateral transfer

for Mr. Miller because he maintained his Pay Grade 15 compensation.  (Doc. 43 at ¶ 5; Doc. 50 at ¶ 5).  Although Mr. Miller possessed the qualifications necessary for the position of Senior Construction Inspector, the City did not, as a matter of course, permit promotional noncompetitive transfers.  (Doc. 43 at ¶ 5; Doc. 50 at ¶ 5).

In October 2018, Mr. Miller was promoted to Senior Construction Inspector.  (Doc. 43 at ¶ 6; Doc. 43-1 at ¶ 7).  As Senior Construction Inspector, Mr. Miller continued to inspect all water wells for the City.  (Doc. 43 at ¶¶ 6, 8; Doc. 50 at ¶ 8; Doc. 43-1 at ¶ 7; Doc. 50-1 at ¶¶ 23–24).  Mr. Miller was the only individual performing water well inspections for the City at this time.  (Doc. 43 at ¶ 7; Doc. 43-1 at ¶ 7).

In the spring of 2019, Ms. St. Louis and another City Ordinance Inspector, Bridget Jackson ("Ms. Jackson"),[2] contacted the City's Human Resources Department, expressing their personal beliefs that they were functioning as Construction Inspectors—a higher-paid position—rather than City Ordinance Inspectors.  (Doc. 43 at ¶ 8; Doc. 50 at ¶ 8; Doc. 43-1 at ¶ 9).  Neither Ms. St. Louis nor Ms. Jackson performed water well inspections for the City before Mr. Fischer's

---

[2] This matter shares remarkable factual similarities to a case brought by Ms. Jackson against the City.  *See Jackson v. City of Cape Coral*, 2:22-CV-408-JES-NPM, 2024 WL 382392 (M.D. Fla. Feb. 1, 2024).  In that separately filed lawsuit against the City, the Honorable Judge John E. Steele granted summary judgment in the City's favor on Ms. Jackson's EPA and Title VII claims.  *See id.*

retirement or since Mr. Miller was "borrowed" from the Utilities Department to conduct those water well inspections.[3]

The City utilized an outside human resources consulting firm, Segal Waters Consulting ("Segal"), to review the compensation and positions of Ms. St. Louis and Ms. Jackson.  (Doc. 43 at ¶ 9; Doc. 50 at ¶ 9; Doc. 43-1 at ¶ 10; Doc. 43-3 at 1).  The City provided Segal with job description questionnaires completed by Ms. St. Louis and Ms. Jackson and a Job Evaluation Manual Template completed by the City's Building Official to aid in the review process.  (Doc. 43 at ¶ 9; Doc. 50 at ¶ 9; Doc. 43-1 at ¶ 10; Doc. 43-3 at 1).  Segal found no justification to reclassify Ms. St. Louis or Ms. Jackson as Construction Inspectors.  (Doc. 43 at ¶ 9; Doc. 50 at ¶ 9; Doc. 43-1 at ¶ 10; Doc. 43-3 at 1).  However, Segal recommended increasing the pay grade for the City Ordinance Inspector position (the position held by Ms. St. Louis and Ms. Jackson) from Pay Grade 13 to Pay Grade 14.  (Doc. 43 at ¶ 9; Doc. 50 at ¶ 9; Doc. 43-1 at ¶ 10; Doc. 43-3 at 1).  The City adopted Segal's recommendation, and Ms. St. Louis received an increase in pay to Pay Grade 14.  (Doc. 43 at ¶ 9; Doc. 50 at ¶ 9; Doc. 43-1 at ¶ 10).

On or around January 2020, the City gradually began to modify its method of inspecting water wells.  (Doc. 43 at ¶ 10; Doc. 43-1 at ¶ 11; Doc. 50-1 at ¶ 35).  Instead of the time-consuming process of observing each phase of the construction (as Mr. Miller did when he was the only one performing water well inspections), the City simplified its process and began to rely on paperwork filed with the State of

---

[3] *See infra* n.5.

4

Florida and benchmark inspections on water well construction.  (Doc. 43 at ¶ 10; Doc. 43-1 at ¶ 11).  The City's transition to this new process was gradual and not immediate.  (Doc. 43 at ¶ 10; Doc. 43-1 at ¶ 11).

In April 2020, Ms. St. Louis was promoted to the position of Construction Inspector to fill a vacancy and her compensation was increased to Pay Grade 15.  (Doc. 43 at ¶ 11; Doc. 50 at ¶ 11; Doc. 43-1 at ¶ 12).  In this position, Ms. St. Louis began to conduct water well inspections using the City's new water well inspection methods and processes.  (Doc. 43 at ¶ 11; Doc. 43-1 at ¶ 12; Doc. 50-1 at ¶ 36).

In March 2021, after Ms. St. Louis raised questions regarding her pay grade and job duties, the City's Human Resources Department performed desk audits on Ms. St. Louis's and Mr. Miller's jobs.  (Doc. 43 at ¶ 13; Doc. 50 at ¶ 13; Doc. 43-1 at ¶ 14).  At this time, Ms. St. Louis was employed as a Construction Inspector, and Mr. Miller was employed as a Senior Construction Inspector.  (Doc. 43 at ¶ 13; Doc. 50 at ¶ 13; Doc. 43-1 at ¶ 14).  The desk audits determined that Ms. St. Louis and Mr. Miller were performing similar tasks and that the tasks were more closely aligned with the duties of a City Ordinance Inspector rather than a Construction Inspector.  (Doc. 43 at ¶ 13; Doc. 50 at ¶ 13; Doc. 43-1 at ¶ 14).

The City then asked Segal to evaluate the job classification of the City Ordinance Inspector position to determine whether its salary range was appropriate.  (Doc. 43 at ¶¶ 14–15; Doc. 50 at ¶ 15; Doc. 43-1 at ¶ 15; Doc. 50-6 at 1).  In April 2021, Segal recommended that the position's compensation be increased from Pay Grade 14 to Pay Grade 15.  (Doc. 43 at ¶ 15; Doc. 50 at ¶ 15; Doc. 43-1 at ¶

16; Doc. 50-6 at 1).  Segal additionally recommended that Ms. St. Louis and Mr. Miller be reclassified as City Ordinance Inspectors.  (Doc. 43 at ¶ 15; Doc. 50 at ¶ 15; Doc. 43-1 at ¶ 16; Doc. 50-6 at 1).  The City adopted both recommendations, and the reclassifications were effective on May 1, 2021.  (Doc. 43 at ¶ 15; Doc. 50 at ¶ 15; Doc. 43-1 at ¶ 16; Doc. 50-6 at 1).

Because Ms. St. Louis was already being compensated at Pay Grade 15, her reclassification to the City Ordinance Inspector position did not affect her pay. (Doc. 43 at ¶ 16; Doc. 50 at ¶ 16; Doc. 43-1 at ¶ 17).  Mr. Miller, however, was being compensated at Pay Grade 19 *before* his reclassification; thus, his salary was higher than the newly established maximum salary assigned to the City Ordinance Inspector position.  (Doc. 43 at ¶ 17; Doc. 50 at ¶ 17; Doc. 43-1 at ¶ 18).  Mr. Miller's prior compensation at Pay Grade 19 was the product of his previous promotion to Senior Construction Inspector and reflected the job duties assigned to and performed in that position.  (Doc. 43 at ¶ 17; Doc. 50 at ¶ 17; Doc. 43-1 at ¶ 18).  The City's Code of Ordinance § 2-37.8 required that Mr. Miller's pay remain the same upon reclassification as follows:

> (c) An employee's rate of pay after reclassification shall not be less than the minimum nor more than the maximum of his or her new pay grade. However, in the event a reclassified employee's rate of pay in his or her former pay grade was greater than the maximum of his or her new pay grade, the employee's rate of pay shall remain the same as in the former pay grade. The rate of pay for those employees shall remain fixed at that pay rate until pay range adjustments cause the established pay range maximum to exceed the employee's rate of pay.

(Doc. 43 at ¶ 18; Doc. 50 at ¶ 18) (quoting Cape Coral, Fla., Code § 237.8(c) (the "Ordinance")). Thus, Mr. Miller's compensation was "red circled" (*i.e.,* frozen)

6

pursuant to this City Ordinance.  (Doc. 43 at ¶ 19; Doc. 50 at ¶19; Doc. 43-1 at ¶ 19).

Mr. Miller would continue to be compensated at Pay Grade 19 until a step within

the City Ordinance Inspector position's Pay Grade 15 salary range was equal to or

greater than his red-circled pay rate.  (Doc. 43 at ¶ 19; Doc. 50 at ¶19; Doc. 43-1 at ¶

19).  At that time, Mr. Miller's compensation would revert to the applicable step in

the City Ordinance Inspector position's Pay Grade 15 salary range.  (Doc. 43 at ¶

19; Doc. 50 at ¶ 19; Doc. 43-1 at ¶ 19).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine dispute of material fact

exists and the moving party is entitled to judgment as a matter of law.  *See* Fed R.

Civ. P. 56(a).  A fact is material if it might affect the suit's outcome under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And "[a]n issue of

fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to

finder for the nonmoving party."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,

1260 (11th Cir. 2004) (citation omitted).

A moving party is entitled to summary judgment when the nonmoving party

"fail[s] to make a sufficient showing on an essential element of her case with respect

to which she has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  The movant always bears the initial burden of informing the district court

of the basis for its motion and identifying those parts of the record that demonstrate

an absence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir. 1991).

When that burden is met, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact that precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'". *Celotex*, 477 U.S. at 324. The Court reviews all the record evidence and draws all legitimate inferences in the nonmoving party's favor. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004) (citation omitted).

## DISCUSSION

### I.   **Procedural Dispute**

Ms. St. Louis requests that the Court strike the City's Renewed Motion for Summary Judgment for violating the Local Rules and this Court's January 24, 2024 Order. (Doc. 49).

The City's motion violates the Local Rules, and counsel for the City shall take note of this violation. The motion was 26 pages (*see* Doc. 43) when motions may be "no longer than twenty-five pages inclusive of all parts" absent leave of court. *See* M.D. Fla. Local Rule 3.01(a). However, rather than strike the offending document or portions thereof, the Court will exercise its discretion and consider the brief in the interest of judicial efficiency. *See Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court has inherent authority to manage its own docket 'so as to achieve the orderly

and expeditious disposition of cases.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991))).

Regarding Ms. St. Louis's argument that the City failed to comply with the Court's January 24, 2024 Order, the Court finds that the City adequately addressed the issues raised in the Court's prior Order. Thus, Ms. St. Louis's Motion to Strike (Doc. 49) is **DENIED**.

## II.    Equal Pay Act

Count I alleges a violation of the Equal Pay Act (EPA), asserting that Ms. St. Louis's male counterparts were paid more and received additional benefits for doing the same work as her. (Doc. 7 at 3–4).

The EPA is divided into two parts: a definition of the violation and four affirmative defenses. *Washington Cnty. v. Gunther*, 452 U.S. 161, 169 (1981). The EPA defines a violation as an employer who pays an employee of one sex less than an employee of the opposite sex for equal work as follows:

> No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d)(1). The statute then sets forth four affirmative defenses, which include whether "such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.*

Courts evaluate EPA claims under a three-step burden-shifting framework. First, the plaintiff bears the burden of establishing a prima facie case.  An employee "establishes a prima facie case under the Equal Pay Act if she shows that her employer paid 'different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which [we]re performed under similar working conditions.'" *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (alteration in the original) (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)).  Second, if the employee establishes a prima facie case, the burden shifts to the employer to justify the differential by establishing at least one of the four affirmative defenses by a preponderance of the evidence.  *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003).  For an employer to rely on any of these affirmative defenses, the employer must demonstrate that the employees' sex played no role in the discriminatory payments.  *See id.*  Third, if the employer establishes such, the burden shifts back to the plaintiff to rebut with affirmative evidence that the justifications provided by the employer are pretextual or were offered as a "post-event justification for a gender-based differential." *Id.* (quotation omitted); *cf. Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991). The court evaluates all evidence proffered by the plaintiff in the light most favorable to her case.  *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994).

**A.  Ms. St. Louis's EPA Prima Facie Case**

"A plaintiff establishes a prima facie case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal" with unequal pay. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) (citation omitted). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989). "The prima facie case . . . focuses solely on the primary duties of each job, not duties that are incidental or insubstantial." *Miranda*, 975 F.2d at 1533. "Although job titles [and job descriptions] are entitled to some weight in this evaluation, 'the controlling factor under the Equal Pay Act is job content'—the actual duties that the respective employees are called upon to perform." *Id.* (quoting *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir. 1973)). "[T]he skills and qualifications actually needed to perform the jobs are considered," but not "the skills and qualifications of the individual employees holding those jobs." *Id.* Experience is relevant as a defense but irrelevant to the prima facie inquiry. *Id.* at 1533 n.18; *Mulhall*, 19 F.3d at 592. Establishing a prima facie case against the employer may be shown by identifying just one employee of the opposite sex. *Mitchell v. Jefferson Cnty. Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991).

Viewing the facts in the summary judgment record in the light most favorable to Ms. St. Louis, the Court finds that Ms. St. Louis has established a prima facie case of sex discrimination under the EPA for some, *but not all*, of the

time period she alleges.  The proffered comparator is Mr. Miller.[4]  Ms. St. Louis argues that "there is sufficient evidence available in the record for a reasonable juror to conclude Ms. St. Louis and Mr. Miller occupy a similar job."  (Doc. 50, at 16–17).  But this is only true for some of the time period.  Indeed, the actual content of Ms. St. Louis's and Mr. Miller's jobs differed over the years.  From the time of Ms. St. Louis's promotion to City Ordinance Inspector until January 2020, when the City simplified the water well inspection process, Mr. Miller was the only individual who inspected water wells for the City.[5]  Ms. St. Louis focuses on the job descriptions to assert the jobs were substantially equal, but this is an improper focus:

> As to the job descriptions, the Trial Judge was clearly correct to place her reliance elsewhere.  The controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform.  Job descriptions prepared by the employer may or may not fairly describe job content.

[4] *See Gosa v. Bryce Hosp.*, 780 F.2d 917, 918 (11th Cir. 1986) ("A male to whom a female plaintiff is compared for purposes of determining whether a wage discrepancy exists for Equal Pay Act purposes is referred to as a 'comparator.'").

[5] The City promoted Ms. St. Louis to the position of City Ordinance Inspector when Mr. Fischer retired from the City.  (Doc. 43 at ¶ 3; Doc. 50 at ¶ 3; Doc. 43-1 at ¶ 4; Doc. 43-2 at 1).  Until his retirement, Mr. Fischer performed all water well inspections for the City.  (Doc. 43 at ¶ 2; Doc. 50 at ¶ 2; Doc. 43-1 at ¶ 4).  Following Ms. St. Louis's promotion, the City "borrowed" Mr. Miller from the Community Development Department and assigned Mr. Miller as the only individual who inspected water wells for the City.  (Doc. 43 at ¶ 4; Doc. 50-1 at ¶ 10–11; Doc. 43-1 at ¶ 5).  Even after Mr. Miller was promoted to Senior Construction Inspector, he continued to perform all of the water well inspections for the City.  (Doc. 43 at ¶¶ 6, 8; Doc. 50 at ¶ 8; Doc. 43-1 at ¶ 7; Doc. 50-1 at ¶¶ 23–24).  Ms. St. Louis did not conduct water well inspections for the City until the City began modifying its water well inspection procedures in 2020.  (Doc. 43 at ¶¶ 10–11; Doc. 43-1 at ¶ 13; Doc. 50-1 at ¶¶ 36–37).

*Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 724 (5th Cir. 1970) (citing 29 C.F.R. § 800.121 (1970)).[6]

The actual duties significantly differed for much of the time.  It was not until the City simplified the water well inspection process in January 2020 that Ms. St. Louis began to inspect water wells alongside Mr. Miller.[7]  Thus, Ms. St. Louis and Mr. Miller did not have substantially equal jobs until January 2020, when they began to perform jobs with the same actual job content.  Mr. Miller is an inappropriate comparator for EPA purposes before that date, and Ms. St. Louis failed to identify a proper comparator for the pre-January 2020 time period.

Ms. St. Louis points to the desk audit (Doc. 50-7), an email from Mr. Miller (Doc. 50-8), and the Segal letter (Doc. 50-6), but all three of these documents arose *after* January 2020.  Specifically, Ms. St. Louis highlights that the desk audit concluded that Ms. St. Louis and Mr. Miller were "doing the same job" (Doc. 50-7 at 5) and that Segal found that their jobs had "the same essential duties" and recommended they "be reclassified as City Ordinance Inspectors in grade 15" (Doc. 50-6 at 1). (Doc. 50 at 9).

However, the desk audit states that an Erosion Control Certification was required for the Construction Inspector and Senior Construction Inspector roles (Doc. 50-7 at 1), and Ms. St. Louis testified in her deposition that she did not obtain

---

[6] Decisions of the former Fifth Circuit issued before October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[7] *Supra* n.5.

this certification until 2019 (Doc. 43-5 at 13–14).  Put simply, Mr. Miller's Senior Construction Inspector job required greater qualifications than Ms. St. Louis's City Ordinance Inspector job, which she occupied all of 2019.  It logically follows that they were not substantially equal jobs.  *See Miranda*, 975 F.2d at 1533.

Further, Ms. St. Louis's reliance on Mr. Miller's email is misplaced for two reasons.  First, Ms. St. Louis offers the email to show that "Mr. Miller stated in an email to the City that he and Ms. St. Louis 'do virtually the same job.'" (Doc. 50 at 9 (quoting (Doc. 50-8 at 1)).  But Ms. St. Louis takes the quoted language out of context.  The full email reads as follows:

> Lisa, I believe I understand what this is really all about.  Someone believes they should be a senior construction inspector because they do virtually the same job.  I personally agree, if they have the qualifications they should have the chance to become a senior as well. Look forward to having your company tomorrow!

(Doc. 50-8 at 1).  Reading the whole statement does not reveal that Mr. Miller believes he and Ms. St. Louis do the same job.  Instead, the sentence and paragraph it is within show that Mr. Miller generically believes that if someone *believes* he or she does virtually the same job *and* has the qualifications, they should have a chance to hold the same senior construction inspector position as him.  That is markedly different than Mr. Miller stating that he and Ms. St. Louis do virtually the same job and should both be Senior Construction Inspectors.  Second, even if Mr. Miller's email had been sent *before* January 2020 and could be interpreted as Ms. St. Louis asserts, Mr. Miller is the comparator, *not* the alleged decisionmaker. His statement, therefore, does not satisfy Ms. St. Louis's burden.  *See Steger*, 318

14

F.3d at 1079 (finding the district court correctly precluded statements from non-decisionmakers as irrelevant and unfairly prejudicial since "statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process" at issue will not satisfy the employee's burden) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  That said, although it is a close call, viewing the summary judgment record in the light most favorable to Ms. St. Louis, the Court finds that she has established a prima facia case of discrimination under the EPA—but only from January 2020 onward.

## B. The City's EPA Affirmative Defenses

Because Ms. St. Louis has established a prima facie case under the EPA from January 2020 onward, she simultaneously "establishes a form of 'strict liability'" that may only be rebutted by one of the affirmative defenses under the Act.  *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Miranda*, 975 F.2d at 1533).  To do so, the City—her employer—bears a heavy burden of persuasion that can only be satisfied if it proves by a preponderance of the evidence that "the factor of sex provided no basis for the wage differential."  *Steger*, 318 F.3d at 1078 (quoting *Irby*, 44 F.3d at 954).  The City offers two main defenses: that Mr. Miller "had greater [water] well inspection experience and seniority over [Ms. St. Louis] and harbored more responsibilities during the period of time the City transitioned into a more simplistic way of inspecting [water] wells," and Mr. Miller's

salary was forcibly red-circled[8] due to the Ordinance.  (Doc. 43 at 13).  Ms. St. Louis seemingly concedes these explanations suffice and that the burden returns to her.  (Doc. 50 at 12) ("[The City] proffered two affirmative defenses from April 2020 onward . . . .  As such, the burden has shifted back to the Plaintiff to show the City's proffered affirmative defenses are pretext.").

The Court agrees that the City has met its burden of establishing by a preponderance of the evidence that the pay differential from January 2020 onward was based on factors other than sex.  Thus, the burden of proof returns to Ms. St. Louis.  The "based on any other factor other than sex" affirmative defense is a "broad" and "catch-all exception" under the EPA.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 197, 204 (1974).  Under it, courts "may consider factors such as the 'unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business.'"  *Steger*, 318 F.3d at 1078 (alteration in the original) (quoting *Irby*, 44 F.3d at 955).  It is undisputed that Mr. Miller had more than two years of experience inspecting water wells by the time Ms. St. Louis inspected her first water well in January 2020.  Mr. Miller's superior experience constitutes a legitimate, nondiscriminatory reason and affirmative defense under the EPA.  *See Irby*, 44 F. 3d at 956.

Additionally, legitimate red circling is accepted as an affirmative defense.  *Mulhall*, 19 F.3d at 596 ("When a claimant identifies a legitimately red circled

---

[8] "The term 'red circle' describes 'certain unusual, higher than normal, wage rates which are maintained for many reasons.'"  *Mulhall*, 19 F.3d at 595 (quoting *Gosa*, 780 F.2d at 918).

employee as a comparator, the employer has an affirmative defense."); *see also Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1570–71 (11th Cir. 1988) (evaluating the legislative history of the EPA, which demonstrates that Congress recognized legitimate red circling as a special exigent circumstance). It is undisputed that the Ordinance was in effect when the City reclassified Ms. St. Louis and Mr. Miller to the same position. Thus, the City's red circling of Mr. Miller's compensation is also a legitimate, nondiscriminatory reason and affirmative defense under the EPA. *See Mulhall*, 19 F.3d at 596. Because the City has proven by a preponderance of the evidence that the pay differential from January 2020 onward was based on factors other than sex, the burden returns to Ms. St. Louis to show pretext.

### C. Ms. St. Louis's Pretext Arguments

"To rebut an employer's legitimate, nondiscriminatory reasons for its adverse action, the employee must produce evidence which directly establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason." *Steger*, 318 F.3d at 1079 (citing *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1290 (11th Cir. 1998)). "Direct evidence of discrimination is evidence that 'reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee' and, 'if believed, proves the existence of a fact without inference or presumption.'" *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible

factor constitute direct evidence of discrimination." *Id.* (alteration in the original and citation omitted); *Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1227 (11th Cir. 2002).

The second method of rebutting an employer's legitimate, nondiscriminatory reasons depends on "whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Ezell v. Wynn*, 802 F.3d 1217, 1227 (11th Cir. 2015) (quoting *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). Ms. St. Louis "must meet each proffered reason 'head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason.'" *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1313–14 (11th Cir. 2016) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). "Further, 'the inquiry into pretext centers on the employer's beliefs, not the employee's beliefs,' and '[a] plaintiff is not allowed to [merely] recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1313 (11th Cir. 2018) (alterations in the original) (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265–66 (11th Cir. 2010)).

Ms. St. Louis has not successfully rebutted any of the City's proffered reasons. "The defense of experience . . . is capable of being rebutted; for example, the plaintiff could show that he or she had equal or more experience of the same

type. . . to gain experience one must necessarily spend time in an activity." *Irby*, 44
F.3d at 956. Ms. St. Louis asserts that "the differences between Mr. [] Miller's and
[her own] work experience, education, and training [do] not justify him being
promoted to Senior Construction Inspector and [her] being denied a promotion to
Senior Construction Inspector." (Doc. 50-1 at ¶ 26). Yet Mr. Miller began
inspecting water wells in 2017, and Ms. St. Louis did not begin inspecting water
wells until January 2020.[9] Ms. St. Louis's conclusory statement is insufficient to
rebut the City's water well inspection experience justification. Thus, Ms. St. Louis
exposes no weakness, implausibility, inconsistency, incoherency, or contradiction in
the City's water well-inspection experience justification. Put simply, Mr. Miller had
more than two years' additional experience inspecting water wells than Ms. St.
Louis.

Ms. St. Louis fares no better regarding the City's proffered reason of the
Ordinance and red circling. Ms. St. Louis argues that red circling is not a valid
affirmative defense because it perpetuates a discriminatory wage rate. But, once
again, her conclusory statement is insufficient to rebut the City's showing. The
Ordinance's clear and unambiguous terms say that "in the event a reclassified
employee's rate of pay in his or her former pay grade was greater than the
maximum of his or her new pay grade, the employee's rate of pay shall remain the
same as in the former pay grade." (Doc. 43-1 at ¶ 18 (quoting Cape Coral, Fla.,
Code § 2-37.8(c)). Ms. St. Louis produces no evidence or argument that could lead a

---

[9] *Supra* n.5.

reasonable jury to disbelieve that the Ordinance caused Mr. Miller's greater pay grade to remain the same after his reclassification.

Ms. St. Louis also attempts to show pretext by stating that sex discrimination is evident because: (1) the City did not sufficiently train her; (2) Mr. Miller's experience did not justify the pay differential; (3) "the City changed the [water] well inspection procedure for Mr. Miller instead of [her];" and (4) Mr. Miller received "preferential treatment" as evident from him having "his own office separate from" female coworkers along with "more frequent overtime assignments," excusals from meetings, and his refusal to partake in certain training.  (Doc. 50 at 13–14; Doc. 50-1 at ¶¶ 26, 28–30).  Ms. St. Louis's statements, by themselves, fail to establish that the City's identified reasons were pretextual.  "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions."  *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) (alterations in the original) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)).

Even if true, these allegations do not undermine the effect of Mr. Miller's experience or the Ordinance.  At most, they might call into question the judgment of the employer, but anti-discrimination employment statutes were "not designed to make federal courts 'sit as a super-personnel department that reexamines an entity's business decisions.'"  *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.

20

1991)).  "We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."  *Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).  In other words, "[w]e do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive."  *Denney*, 247 F.3d at 1188.  To answer that question, "our inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Chapman*, 229 F.3d at 1030 (11th Cir. 2000) (quoting *Elrod*, 939 F.2d at 1470 (11th Cir. 1991)).  Ms. St. Louis failed to carry her burden because she has offered conclusory allegations in lieu of any evidence that could "permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting *Cooper–Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

Ms. St. Louis asserts that, at the very least, these allegations create genuine issues of material fact which preclude granting Defendant's Motion for Summary Judgment.  (Doc. 50 at 18–19).  The Court respectfully disagrees.  The Eleventh Circuit has explained as follows:

> [I]n considering whether a plaintiff has presented a jury question on pretext, we have required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's *overall* justification. . . . The plaintiff must call into question the veracity of the defendant's ultimate justification itself.

*Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996). Ms. St. Louis cannot avoid summary judgment with unsubstantiated allegations. "Federal Rule of Civil Procedure 56 requires that a party defending against a motion for summary judgment respond with affidavits, depositions, or other evidence to demonstrate that there are material facts that must be presented to a jury for resolution." *Miranda*, 975 F.2d at 1533. "'[B]ecause the plaintiff bears the burden of establishing pretext, [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Young*, 840 F.2d at 829. Put differently, "a plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs*, 106 F.3d at 1529. Ms. St. Louis has proffered only unrelated and unsubstantiated conclusory allegations instead of affirmative evidence directly challenging the veracity of the City's stated justifications. This is insufficient to carry her burden. Thus, because Ms. St. Louis has established a prima facie case for only a portion of the time period, the City has shown justifications for the pay differential for the relevant time period, and these justifications have not been shown to be pretextual, the City is entitled to summary judgment as to the EPA count.

## III.   Title VII Claim

Ms. St. Louis asserts in Count II of the Amended Complaint that the pay differential also violated Title VII. (Doc. 7 at 5–6). "Title VII and the Equal Pay Act

exist side by side in the effort to rid the workforce of gender-based discrimination." *Miranda*, 975 F.2d at 1527.  Title VII, in relevant part, makes it unlawful for an employer to discriminate against any individual with respect to h[er] compensation because of such individual's sex.  *See* 42 U.S.C. § 2000e–2(a)(1).

To prevail on a Title VII claim, an employee "must show 'through either direct evidence or circumstantial evidence' that her employer acted with discriminatory intent."  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (quoting *Wilson*, 376 F.3d at 1085).  The Court applies the same definition of direct evidence to Ms. St. Louis's Title VII claim as it previously noted in the context of her EPA claim.  *See supra* Section II(C).  "If the plaintiff presents direct evidence that the employer acted with discriminatory motive and the trier of fact believes it, then the employer can avoid liability only if he or she satisfies the trier of fact by a preponderance of the evidence that the same employment decision would have been reached in the absence of the discriminatory motive."  *Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1518 (11th Cir. 1990).  "In contrast, circumstantial evidence only 'suggests, but does not prove, a discriminatory motive,' and may be evaluated under the burdenshifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."  *Jefferson*, 891 F.3d at 921–22 (quoting *Wilson*, 376 F.3d at 1086).  The *McDonnell Douglas* framework applies because Ms. St. Louis advances her argument exclusively on circumstantial evidence.  (*See* Doc. 50 at 16–18).

"Under this framework, the plaintiff initially must establish a prima facie case of discrimination." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). "The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason." *Id.* "If it meets that burden, the presumption of intentional discrimination drops out of the case and [the plaintiff] must demonstrate that [the employer]'s 'proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that [he] has been the victim of intentional discrimination.'" *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) (cleaned up) (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019)). While the analytical frameworks for Title VII and the EPA share many similarities, "there is a significant difference between Title VII and the EPA as to both elements and burdens of proof." *Meeks*, 15 F.3d at 1019. One such difference is that "[a] plaintiff suing under the Equal Pay Act must meet the fairly strict standard of proving that she performed substantially similar work for less pay[,]" but "there is a relaxed standard of similarity between male and female-occupied jobs" under Title VII. *Miranda*, 975 F.2d at 1526.

Additionally, if successful in "establishing a prima facie case, the plaintiff in a Title VII action creates [only] a rebuttable 'presumption that the employer unlawfully discriminated against' him"—not a form of strict liability like the EPA. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983) (quoting

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

"Under Title VII, the risk of nonpersuasion always remains with the plaintiff[,]"

*Meeks*, 15 F.3d at 1019, unlike the EPA, where the burden of persuasion falls on the

defendant to establish a justification.  *Mulhall*, 19 F.3d at 592 n.12.  "Once that

justification is offered [under Title VII], the presumption of discrimination falls

away and the plaintiff tries to show not only that the employer's justification was

pretextual, but that the real reason for the employment action was discrimination."

*Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023); *see also*

*Mulhall*, 19 F.3d at 597 (stating that one of the ways "Title VII differs from the

EPA" is that the "plaintiff must prove discriminatory intent" under Title VII

(citation omitted)).

### A. Ms. St. Louis's Title VII Prima Facie Case

"The plaintiff establishes a prima facie case of sex discrimination under Title

VII by demonstrating that she is female and that the job she occupied was similar

to higher paying jobs occupied by males."  *Miranda*, 975 F.2d at 1529.  Specifically,

a "plaintiff must show that she and her comparators are 'similarly situated in all

material respects.'"  *Lewis*, 918 F.3d at 1224.  A plaintiff is not required to prove

"that she and her comparators are identical save for their" gender, or that they have

precisely the same title.  *Id.* at 1227.  "Nor will minor differences in job function

disqualify a would-be comparator."  *Id.*  But a plaintiff cannot establish a Title VII

prima facie case against comparator "employees who are differently situated in

'material respects'—*e.g.*, who engaged in different conduct, who were subject to

different policies, or who have different work histories." *Id.* A plaintiff must establish her prima facie case by a preponderance of the evidence. *Miranda*, 975 F.2d at 1528.

Ms. St. Louis has already established a prima facie case under the EPA from January 2020 onward, and the Court finds the same evidence establishes a prima facie case under Title VII for those same dates. *Mulhall*, 19 F.3d at 598 ("Clearly, if plaintiff makes a prima facie case under the EPA, she simultaneously establishes facts necessary to go forward on a Title VII claim") (citing *EEOC v. White & Sons Enterps.*, 881 F.2d 1006, 1008, 1010 (11th Cir. 1989)). The question is thus whether Ms. St. Louis has established a prima facie case under Title VII's less stringent standard for the time period excluded from her EPA prima facie claim.

The Court finds she has not. Even under Title VII's less stringent standard, Ms. St. Louis still has not made a prima facie case other than from January 2020 onward. While "disparate pay is an adverse employment action under Title VII," *Bowen*, 882 F.3d at 1364, "[t]reating different cases differently is not discriminatory, let alone intentionally so." *Lewis*, 918 F.3d at 1222–23. From the time of Ms. St. Louis's promotion to City Ordinance Inspector until January 2020, when the City simplified the water well inspection process, Mr. Miller was the only individual who inspected water wells for the City.[10] Given that Ms. St. Louis and her comparator did not share this material job function before January 2020, it cannot be said they shared only "minor differences in job function." *Lewis*, 918 F.3d

---

[10] *See supra* n.5.

26

at 1227.  Instead, they were "differently situated in 'material respects'—e.g., [they] engaged in different conduct . . . ."  *Id.*  Thus, Ms. St. Louis has only established a Title VII prima facie case from January 2020 onward.

### B. The City's Employer Justifications

"[E]stablishing a prima facie case of discrimination entitles the plaintiff to judgment—to victory—if the employer either can't, won't, or doesn't provide a nondiscriminatory explanation for its actions."  *Id.* at 1222.  "Defendant's burden of production in rebutting the prima facie case is 'exceedingly light.'"  *Miranda*, 975 F.2d at 1529 (quoting *Perryman v. Johnson Products, Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).  "[D]efendant must merely proffer non-gender based reasons, not prove them."  *Meeks*, 15 F.3d at 1019 (citing *Miranda*, 975 F.2d at 1529).  "[A]ll that matters is that the employer advance an explanation for its action that is not discriminatory in nature."  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999).

The City offers the same justifications as it did in response to Ms. St. Louis's EPA claim: Mr. Miller's superior water well inspection experience and the Ordinance.  (Doc. 43 at 13).  Ms. St. Louis concedes the City has met its burden (Doc. 50 at 17), and the Court agrees.  The Court finds that these affirmative defenses are sufficient to meet the City's burden under Title VII.  *See Miranda*, 975 F.2d at 1528 (stating that Title VII adopted the affirmative defenses of the EPA) (citing *Gunther*, 452 U.S. 161); *see also Williamson v. Alabama Dep't of Mental Health & Mental Retardation*, No. 21-13274, 2023 WL 5287873, at *8 (11th Cir.

Aug. 17, 2023) (*per curiam*) (stating that "superior . . . experience . . . is a legitimate, non-discriminatory reason" under Title VII).  The burden thus shifts back to Ms. St. Louis to establish pretext.

### C.  Ms. St. Louis's Title VII Pretext Arguments

"A plaintiff may overcome the employer's asserted legitimate reasons and avoid judgment as a matter of law 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999) (quoting *Combs*, 106 F.3d at 1528).  Like the pretext analysis utilized under the EPA, the Title VII analysis turns on "whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996).  But a plaintiff's Title VII burden to demonstrate pretext mixes with her need to demonstrate intentional discrimination.  *Ossmann*, 82 F.4th at 1014.  "[O]nce the plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is not appropriate, because '[i]ssues of fact and sufficiency of evidence are properly reserved for the jury.'"  *Combs*, 106 F.3d at 1530 (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)).  But "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of

material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024–25.  Ms. St. Louis offers the same arguments for Title VII pretext as she did for EPA pretext.  (*See* Doc 50 at 17–18).  For the same reasons those arguments were insufficient under the EPA, they are also insufficient under Title VII.  *See supra* Section II(C).  Ms. St. Louis's assertions do not establish a genuine issue of material fact that could demonstrate that the City's justifications are pretextual and much less that intentional discrimination occurred.

Because Ms. St. Louis couched her argument exclusively within the familiar *McDonnell Douglas* burden-shifting framework, the Court utilized the vernacular typically used when performing that analysis.  That said, the Court has carefully considered all summary judgment evidence and finds that Ms. St. Louis has failed to present sufficient circumstantial evidence that "raises a reasonable inference that the employer discriminated against [Ms. St. Louis]," whether that be called "convincing mosaic," or any other metaphor.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *cf. McCreight v. AuburnBank*, __ F.4th __, 2024 WL 4232440, at *10 (11th Cir. Sept. 19, 2024).  Although the Court appreciates Ms. St. Louis's frustration with her employment situation with the City, she has not identified genuine issues of material fact that should be resolved by a jury for her Title VII claim.  The City is therefore entitled to summary judgment as to Ms. St. Louis's Title VII claim.

## CONCLUSION

For the reasons above, Ms. St. Louis's Motion to Strike (Doc. 49) is **DENIED**, and the City's Renewed Motion for Summary Judgment as to Plaintiff's Amended Complaint (Doc. 43) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate all deadlines, deny any pending motions as moot, and close the case.

**ORDERED** in Fort Myers, Florida on September 26, 2024.


JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE